## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DUANE JOSEPH JOHNSON,                    :
                                        :
            Plaintiff,                   :
     v.                                  :        Civil Action No. 18-cv-03062 (RBW)
                                        :
DISTRICT OF COLUMBIA, *et al.*,          :
                                        :
            Defendants.                  :

<u>MEMORANDUM OPINION & ORDER</u>

I.      Background[1]

On July 22, 2022, the Court entered a Memorandum and Order, addressing the arguments

for dismissal pursuant to Federal Rule 12(b)(6), raised by two of the defendants, the District of

Columbia and Chaplain Jimmie Allen, in their Memorandum in Opposition, ECF No. 26 at 7–12,

to the plaintiff's Motion for Entry of Default, ECF No. 24. *See* Mem./Ord. at 6–21. Ultimately,

the Court dismissed certain claims and defendants, but found that several of the claims filed by the

plaintiff survived, namely: Count 1 – common law negligence (against the District and Allen);

Count 2 – violations of the Americans with Disabilities Act ("ADA") (against the District); Count

3 – violations of the ADA and the Rehabilitation Act (against the District); Count 4 – violations

of 42 U.S.C. § 1983 (against Allen and defendant Reverend Samuel Whittaker); Count 5 –

violations of 42 U.S.C. §§ 1985, 1986 (against Allen and Whittaker); Count 6 – Municipal Liability

(against the District); Count 7 – negligent hiring, training, and supervision (against the District);

Count 8[2] –  negligent infliction of emotional distress (against the District, Allen, and Whittaker),

---

[1]      The Court incorporates, in full, the Background Section of its prior Memorandum and Order ("Mem./Ord."), ECF No. 38, at 1–4.

[2]      The Complaint ("Compl."), ECF No. 1-2, mistakenly lists Count 8 as "Count III," as the plaintiff earlier pleaded a Count III in his Complaint (*continued* . . .)

and; Count 9 – punitive damages (against Allen and Whittaker—in their individual capacities only). *See id*. at 2–21, 24; *see also* Compl. ¶¶ 65–113.

Because none of the remaining defendants had yet been properly served with process, the Court directed the Clerk to reissue summonses for those defendants and to cause service to be effected by the United States Marshals Service, as the plaintiff is proceeding *in forma pauperis* ("IFP"). *See* Mem./Ord. at 21–24; *see also* 28 U.S.C. 1915(d). The plaintiff was also directed to provide addresses where Allen and Whittaker could be served with process, and to show cause why those defendants should not be dismissed in their individual capacities, based on the Court's inability to have service made on those defendants. *See* Mem./Ord. at 21–24.

On August 10, 2022, counsel filed a Notice of Entry of Appearance on behalf of the plaintiff, ECF No. 44, who until that time, had been proceeding *pro se*. On August 26, 2022, the plaintiff's counsel filed a Response to the Order to Show Cause ("Response"), ECF No. 41, providing addresses where Allen and Whittaker could be served with process, and on the same date, the Clerk of Court reissued summonses for the defendants, *see* ECF No. 42. In the Response, counsel also indicated that she would assume responsibility for accomplishing service of process on the defendants, relieving the Court of that obligation. *See id*. The plaintiff was ordered to serve the defendants by November 25, 2022. *See id*. On September 12, 2022, the Court, by Minute Order, vacated the Show Cause Order.

On October 3, 2022, the District and Allen filed a Consent Motion for an Extension of Time to file their response to the Complaint ("CME"), ECF No. 43, which was granted by the Court, *see* Minute Order (Oct. 7, 2022). On November 18, 2022, the District, Allen, and Whittaker

---

(. . . *continued*) (ADA Rehabilitation Act claims). *Compare* Compl. ¶¶ 68–71, *with id*. ¶¶ 107–11. Consequently, the plaintiff's negligent infliction of emotional distress claims will be continue to be considered as "Count 8" for purposes of clarity. *See* Mem./Ord. at 4 n.3.

filed a collective Motion to Dismiss pursuant to Federal Rules 12(b)(5) and 12(b)(6), and/or for Partial Summary Judgment ("Defs.' Mot."), ECF No. 45, to which the plaintiff filed an Opposition ("Pl.'s Opp."), ECF No. 47, that also included a Motion for Discovery.[3]  On December 20, 2022, the defendants filed their Reply ("Reply"), ECF No. 49, and their Opposition to the Motion for Discovery, ECF No. 50.

For the reasons explained below, the Court grants in part the defendants' Motion to Dismiss.  Specifically, the Motion to Dismiss is granted in its entirety as to Count 5—alleging violations of 42 U.S.C. §§ 1985 and 1986 against Allen and Whittaker, and partially as to Count 4—alleging violations of 42 U.S.C. § 1983.  The Court also partially grants the defendants' request for summary judgment partially as to Count 1—asserting medical negligence and negligence.  The defendants' other arguments for dismissal are denied, and the plaintiff's request to conduct discovery as to those claims is granted.

II.    Standards of Review

*Federal Rule 12(b)(5)*

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as [a] defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Pursuant to Federal Rule of Civil Procedure 12(b)(5), "if the plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" without prejudice.  *Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003). "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of [Federal Rule of Civil Procedure 4] and any other

---

[3]        An identical duplicate of this submission is also docketed at ECF No. 48.

applicable provision of law." *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation omitted).

### *Federal Rule 12(b)(6)*

A plaintiff need only provide in his complaint a "short and plain statement of [his] claim showing that . . . [he] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests[,]" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When considering a Rule 12(b)(6) motion, the Court "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks and citation omitted), *cert. denied*, 568 U.S. 1088 (2013). However, "the [C]ourt need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor must a court accept "a legal conclusion couched as a factual allegation," nor "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Id.*

Although the plaintiff is now represented by counsel, he filed the Complaint *pro se*. *See generally* Compl. A *pro se* complaint "must be held to less stringent standards than formal

pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citation omitted), but it still "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of [the defendant's] misconduct,' " *Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678–79), *cert. denied*, 559 U.S. 1039 (2010).

In ruling on a motion to dismiss for failure to state a claim, a court is limited to considering the facts alleged in the Complaint, any documents attached to or incorporated in the complaint, matters of which a court may take judicial notice, and matters of public record.[4] *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624 (D.C. Cir. 1997); *see also Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999), *aff'd*, 38 Fed. Appx. 4 (D.C. Cir. 2002) ("[W]here a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citing *Greenberg v. The Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999)); *Ward v. Dist. of Columbia Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (finding that a court may consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss[,]" without converting to summary judgment) (internal quotation marks omitted).

*Federal Rule 56*

Courts will grant a motion for summary judgment if "the pleadings, depositions, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[4]    The defendants move in the alternative for summary judgment *only* as to Count 1 (Negligence). *See* Defs.' Mot. at 2, 18–20.  In their Reply, they correctly point out that the plaintiff has improperly presented, in his Opposition, extrinsic evidence supporting claims other than Count 1.  *See* Reply at 2–3.  The Court makes clear that it has not considered any of the plaintiff's evidence beyond that submitted in support of Count 1.

as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, courts must view the evidence in the light most favorable to the nonmoving party. *Bayer v. U.S. Dep't of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992). Under Rule 56, if a party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.    Discussion

A. *Service of Process*

The defendants argue that the plaintiff's most recent attempt at service of process on the District was defective, and therefore, all claims against it should be dismissed pursuant to Rule 12(b)(5). *See* Defs.' Mot. at 6–8. Notably, however, the defendants previously represented that the District (and Allen) had been served with process, alleging no service of process defects. *See*, *e.g.*, CME Memorandum at 1. In any event, the Court finds that service of process on the District was proper.

For a myriad of reasons, and despite the District's actual notice of this lawsuit, the Court itself experienced difficulty attempting to serve the defendants with process, despite protracted efforts to do so. *See, e.g.*, Minute Order (May 18, 2020); First Returns of Service, ECF Nos. 18–19; Mem./Ord. at 22–24; Summonses Reissued, ECF No. 42; Minute Order (Sept. 12, 2022); *see also* 28 U.S.C. 1915(d).

On September 12, 2022, the same date that the plaintiff became formally responsible for accomplishing service of process on the defendants, *see* Minute Order (Sept. 12, 2022), and in accordance with Federal Rule 4(j)(2) and D.C. Superior Court Civil Rule 4(j)(3)(A), the plaintiff served the District by serving the City's Attorney General and Mayor by certified mail, *see* Pl.'s

Opp'n Exhibit 4 , ECF No. 46-5 (Proof of Service Documents).  The defendants' sole argument to having been properly served is that the plaintiff failed to request return receipts as required, *see* Defs.' Mot. at 7–8 (citing Super. Ct. Civ. R. 4(c)(4)), but they are mistaken. The official tracking by the United States Postal Service clearly indicates that the plaintiff indeed requested electronic delivery confirmation, *see* Pl.'s Opp'n Ex. 4, which the Court finds to be proper and consistent with the spirit of Superior Court Civil Rule 4(c)(4).

B. *The Plaintiff's Claims*

The defendants' arguments in support of dismissal pursuant to Federal Rule 12(b)(6) largely duplicative of their prior arguments that have already been presented and considered by this Court.  *See* Mem./Ord. at 6–21.

(1) Negligence Claims

*First*, the defendants contend that the plaintiff's negligence claims (Count 1) must be dismissed "because neither the District nor Chaplain Allen can be held liable for negligent provision of health care services."  Defs.' Mot. at 2.  They once again take a narrow view of the plaintiff's negligence allegations, analyzing them primarily under the umbrella of medical malpractice, and arguing that "the District is not liable for any negligent medical care provided to [the] [p]laintiff because the District relies on an independent contractor—Unity Healthcare, Inc.— to provide medical services to inmates in the D.C. Jail and [the] CTF [Central Treatment Facility], including medication."  *Id.* at 19.  Indeed, they move for summary judgment on this issue, and have submitted a sworn declaration by Dr. Beth Jordan, the Medical Director of the District of Columbia Department of Corrections ("DOC"), who attests that the DOC's independent contractor, Unity Healthcare, Inc., is solely responsible for the provision of medical services, including the distribution of medications, to inmates at the District of Columbia Central Detention

Facility ("CDF") (or the "D.C. Jail") and the CTF, *see* Defs.' Statement of Material Fact ¶¶ 1– 6; Defs.' Mot. Exhibit 2 (Jordan Declaration), ECF No. 45-2, ¶¶ 1–20.  The plaintiff concedes this point and now indicates that he does not intend to pursue any medical malpractice claims. *See* Pl.'s Previous Opposition, ECF No. 35, at 8 n.9; Pl.'s Opp'n at 3 n.2; *id.* at 14.

As previously discussed, *see* Mem./Ord. at 9–10, the Court agrees that the District's "obligation to exercise reasonable care in providing medical services may lawfully be delegated," *Herbert v. Dist. of Columbia*, 716 A.2d 196, 201 (D.C. 1998), and here, there is no dispute that the District delegated its duty to provide that responsibility to Unity.  Consequently, to the extent that it was not clear before, the Court will grant summary judgment as to all medical malpractice claims asserted in Count 1, including those arising from the alleged failure of the District and Allen to prescribe him specific medications.   *See* Compl. ¶ 66.

However, the remainder of Count 1 survives. The defendants once again ignore the overarching common law duty of care owed to prisoners by the District, the DOC, and their employees.  *See Sledge v. United States*, 723 F. Supp. 2d 87, 100 (D.D.C. 2010) (finding that a prisoner's claims shall "survive because they include claims for simple negligence . . .").  Here, the plaintiff asserts negligence allegations that fall squarely into this category, distinct from any medical malpractice claim.  He alleges that the DOC and Allen, on more than one occasion, were negligent in failing to "aid and assist him[,]" including, refusing to let him use the restroom and failing to alert medical staff that he required attention.  *See, e.g.*, Compl. ¶¶ 47, 60–63, 66, 69. An inmate's medical condition, and general wellbeing, often requires action of prison staff that falls outside of the parameters of direct medical care.  To that end, the DOC and its employees bear a "statutory responsibility for 'the safekeeping, care, protection, instruction, and discipline of all persons committed to [its] institutions.'" *Herbert*, 716 A.2d at 198 (quoting D.C. Code § 24–442);

*Toy v. Dist. of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (same). "Section 24-442 [of the District of Columbia Code] encompasses the common law rule, which requires prison authorities and employees to exercise reasonable care in carrying out these obligations." *Herbert*, 716 A.2d at 198 (citing *Hughes v. Dist. of Columbia*, 425 A.2d 1299, 1302 (D.C. 1981). This responsibility "includes the duty 'to use reasonable care in supervising and controlling their employees.'" *Lee v. Corr. Corp. of Am./CTF*, 61 F. Supp. 3d 139, 145 (D.D.C. 2014) (quoting *Morgan v. Dist. of Columbi*a, 449 A.2d 1102, 1108 & n.3 (D.C. 1982), *rev'd on other grounds*, 468 A.2d 1306 (1983) (en banc)). Accordingly, "it is [ ] just that the public be required to care for [a] prisoner, who cannot[,] by reason of the deprivation of his liberty, care for himself." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

For these reasons, and for those already previously iterated, *see* Mem./Ord. at 8–10, the Court finds that the common law and statutory negligence claim against the District and Allen survive, given the detailed supporting factual allegations contained in the Complaint, *see, e.g.*, Compl. ¶¶ 12, 16, 19, 24–32; 60–61, 66–67, 69, 73, 81.

*Second*, the defendants renew their argument that the plaintiff has failed to state a claim for negligent hiring, training, and supervision (Count 7) against the District. *See* Defs.' Mot. at 20–21. "It is well established that an employer," including the District of Columbia, can be held liable for the torts of an employee under the doctrine of *respondeat superior*." *Moonblatt v. Dist. of Columbia*, 572 F. Supp. 2d 15, 27 (D.D.C. 2008) (citing *Phelan v. City of Mount Rainier*, 805 A.2d 930, 937–38 (D.C. 2002)). The defendants repeat their position that a plaintiff must set forth facts in his Complaint indicating that an employer knew or should have known that its employee behaved in a dangerous or otherwise incompetent manner, and nonetheless failed to adequately train or supervise the employee. *See* Defs.' Mot. at 20–21. They assert that the plaintiff has failed

to plead such facts, more specifically, that he has failed to "allege any facts specifically about the District's hiring, training, and supervision of Chaplain Allen and Reverend Whittaker, the actions of any supervisors before [the] [p]laintiff's incarceration at CTF, or how Chaplain Allen and Reverend Whittaker in particular should have been trained or supervised differently." *Id.* at 21. The defendants characterize the plaintiff's allegations as overbroad, unparticularized, and improperly focused on—not Allen and Whittaker—but the District's "hiring, training, and supervision of *all* officers and 'defendant-employees.' " *Id.* (emphasis in original) (quoting Compl. ¶ 100).

But the plaintiff spends ten paragraphs, *see* Compl. at 21–24, clearly alleging, *inter alia*, that "supervisory staff within DCDOC and CTF, as well as the command structure of both knew" of the alleged harms, including, a "pattern" of "indifference [,] . . . harassment, intimidation, physical abuse, cover-up, and . . . religious discrimination within [the] DCDOC and [the] CTF[,]" including the acts carried out by Allen and Whittaker, *see id.* ¶¶ 96, 99. He alleges that, despite his many complaints, *see id.* ¶¶ 41, 45–46, 48, the "DOC has failed or refused to hold accountable high-ranking supervisors [and others] . . . over a period of years," subjecting the plaintiff "and other inmates to "the constitutional and statutory violations alleged[,]" *id.* ¶ 95, and that the District failed to "exercise due care and caution in [its] hiring, appointment and promotion practices, and[,]" its training procedures, *id.* ¶¶ 96, 101.

"[A]lthough [these] "factual allegations are somewhat thin, allowing the plaintiff's negligent supervision claim to proceed to discovery as well will not unduly burden the District." *James v. Dist. of Columbia*, 869 F. Supp. 2d 119, 122 (D.D.C. 2012). At this stage of the case, the plaintiff need not *prove* a claim of supervisory liability, rather, he must only *state* a plausible claim, which he has accomplished. *See Paavola v. United States*, 459 F. Supp. 3d 21, 40–41 (D.D.C.

2020). The allegations "meet Rule 8(a)(2)'s threshold requirement that the plaintiff put forth a short and plain statement of the claim such that the defendant is put on fair notice of the nature of the plaintiff's claim and the grounds upon which it rests. *James*, 869 F. Supp. 2d at 121 (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Because the District puts forth no other arguments to suggest that the plaintiff's claim against the District is so implausible that dismissal is warranted," and for the reasons stated above and already explained, *see* Mem./Ord. at 9–11, the plaintiff's negligence claims survive the defendants' Motion to Dismiss. *Id.* (citing *Iqbal*, 556 U.S. at 677).

*Third*, the defendants again argue that the plaintiff fails to state a claim for negligent infliction of emotional distress ("NIED") (Count 8) against all three defendants. *See* Defs.' Mot. at 2, 21–24. "Under District of Columbia law, a plaintiff may make out a claim for negligent infliction of emotional distress in one of two ways." *Clark v. Dist. of Columbia*, 241 F. Supp. 3d 24, 30 (D.D.C. 2017). The first method is to satisfy the standards for the "'zone of physical danger' rule" by showing that "'serious' and verifiable" emotional distress occurred because the defendant's actions caused the plaintiff to be "in danger of physical injury," and as a result the plaintiff "feared for his own safety." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796–97 (D.C. 2011) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990)). Alternatively, a plaintiff may

> show that (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff.

*Id.* at 810–11.  The defendants contend that the plaintiff fails to satisfy "method one," the zone of danger theory, because the allegations do not "implicate Chaplain Allen or Reverend Whittaker's conduct[,]" and that he also fails to satisfy "method two," the special relationship theory, because the plaintiff does not identify a special relationship, nor can he, because "a custodial relationship undertaken by correctional officials does not constitute a 'special relationship' for purposes of NIED." Defs.' Mot. at 2, 23–24.

The Court agrees, and the plaintiff concedes, *see* Pl.'s Opp'n at 15, that, standing alone, "a custodial relationship undertaken by law enforcement" is not a " 'special relationship' purposes of NIED." *Lesesne v. Dist. of Columbia*, 146 F. Supp. 3d 190, 196 (D.D.C. 2015) (relying on *Hedgepeth*, 22 A.3d at 814–15).  Although the plaintiff contends that Allen and Whittaker, as religious officials, are in a special relationship with inmates due to their responsibility over their "spiritual well-being[,]" he cites to no authority in support of this contention.  *See* Pl.'s Opp'n at 15.

The Court notes, however, that the Complaint adequately sets forth a zone of danger theory. *See* Compl. ¶¶ 110–11.  And, at this stage of this litigation, "the zone of danger test—the more common means of establishing an NIED claim" may be imputed by mere "virtue of [the plaintiff's] custody[.]"  *Lesesne v. Doe*, 65 F. Supp. 3d 1, 7–8 (D.D.C. 2014).  The defendants attempt to defeat any zone of danger claim by primarily focusing on the plaintiff's purported failure to plead any predicate negligence claim, *see* Defs.' Mot. at 23, but as explained above, the Court finds that such a claim indeed exists.  As a result, and for the reasons already expressed, *see* Mem./Ord. at 11–12, Count 8 shall also survive dismissal.

(2) Constitutional Claims

As an initial matter, the Court notes that the plaintiff has now voluntarily withdrawn all claims against Allen and Whittaker brought under 42 U.S.C. §§ 1985 and 1986 (Count 5). *See* Pl.'s Opp'n at 1 n.1; *see also* Defs.' Mot. at 14–15. Consequently, those claims shall be dismissed.

The defendants also argue that both the § 1983 claims (Count 4) against Allen and Whittaker, and the municipal liability claims (Count 6) against the District, should be dismissed, for various reasons. *See* Defs.' Mot. at 8–14.

*First*, they assert that the plaintiff has failed to sufficiently allege a § 1983 claim for (1) cruel and unusual punishment under the Eighth Amendment, or for (2) retaliation or interference with his free speech or free exercise under the First Amendment. *See id.* at 8–9. The Court agrees as to the former argument, but disagrees as to the latter. Notably, the plaintiff only references the Eighth Amendment, or to cruel and unusual punishment, is in connection with his §§ 1985 and 1986 claims, *see* Compl. ¶¶ 80–81, 85, which he has now withdrawn, *see* Pl.'s Opp'n at 1 n.1. And, the plaintiff's § 1983 claims focus entirely and explicitly on violations of the First Amendment. *See id.* ¶ 77. Accordingly, any claims intended under the Eighth Amendment must be dismissed.

The Court finds, however, that the plaintiff has stated a claim for retaliation under the First Amendment. "To establish a claim for retaliation under the First Amendment, an individual must prove (1) that he engaged in protected conduct, (2) that the government 'took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again;' and (3) that there exists 'a causal link between the exercise of a constitutional right and the adverse action taken against him.' " *Doe v. Dist. of Columbia*, 796 F.3d 96, 106 (D.C. Cir. 2015) (quoting *Aref v. Holder*, 774 F. Supp. 2d 147, 169 (D.D.C. 2011)). The defendants contend that the plaintiff has failed to satisfy the second and third elements, arguing that he "does not allege sufficient facts

to establish that Chaplain Allen or Reverend Whittaker took any action that would deter [the] [p]laintiff from exercising his First Amendment rights." Defs.' Mot. at 8 (citing Compl. ¶ 77). However, they acknowledge that the plaintiff alleges that "Chaplain Allen and Reverend Whittaker did not sufficiently accommodate his religious needs," *see id.* (citing Comp. ¶¶ 33– 37, 39–45), but assert nonetheless that the Complaint is devoid of facts that the defendants "did anything retaliatory that would have deterred [the] [p]laintiff from exercising his right to speech or to practice his religion[,]" *id.* at 8–9.

But this broad argument conveniently glosses over many of the substantive details in the Complaint that give rise to the plaintiff's First Amendment claim. The plaintiff clearly alleges that his attempts to engage in religious expression were intentionally thwarted by Allen and Whittaker, and after he complained about their actions, and continued his attempts to worship, Allen and Whittaker retaliated against him by not only failing to take required corrective action, but by further unfairly restricting his ability to worship, confining him to his cell, and by refusing to accommodate his necessary physical needs, causing him anxiety and humiliation. *See* Compl. ¶¶ 32–51, 54–62. These allegations are sufficient at the pleading stage. *See, e.g., Aref v. Holder*, 953 F. Supp. 2d 133, 146 (D.D.C. 2013) (finding that the BOP's decision to ignore recommendation regarding prisoner's placement and accommodations constituted an act of First Amendment retaliation that withstood 12(b)(6) challenge); *Pinson v. United States Dep't of Justice*, 246 F. Supp. 3d 211, 224 (D.D.C. 2017), (holding that the refusal to investigate a prisoner's administrative complaints was sufficiently chilling to state a claim for First Amendment retaliation), *appeal dismissed*, No. 17–5120, 2017 WL 5664981 (D.C. Cir. Oct. 30, 2017); *Garcia v. Dist. of Columbia*, 56 F. Supp. 2d 1, 6–7 (D.D.C. 1998) (finding that prisoner plaintiffs' allegations that defendant prison officials "'intended to intimidate, annoy, alarm, and verbally abuse Plaintiffs and

deliberately and intentionally inflict humiliation and degradation upon them' . . . [,]assumed to be true for purposes of [a 12(b)(6)] motion, do allege a chronology of events that sufficiently states all of the elements of a claim for retaliation for activities protected by the First Amendment."). "Accepting the allegations of the [C]omplaint as true," as the Court must do at this juncture, the plaintiff's "allegations are sufficient to withstand a motion to dismiss." *Aref*, 953 F. Supp. 2d at 147.

The defendants also assert that the Complaint is devoid of a free exercise claim under the First Amendment, arguing that the plaintiff's allegations that Allen and Whittaker were deliberately indifferent to his right to "practice his religion and use free speech to do so[,]" Compl. ¶ 77, is too ambiguous to make out a colorable cause of action, *see* Defs.' Mot. at 9. This argument is somewhat confounding. Although the plaintiff did not expressly use the phrase "free exercise," he inarguably raises a claim under § 1983, *see* Compl. at 15, which incorporates multiple detailed examples of the defendants' alleged long-term interference with his efforts to practice Judaism, *see, e.g., id.* ¶¶ 32–51, 54–62, making a free exercise claim arguably the most obvious claim he is making.

For all of these reasons, the Court finds that the plaintiff has sufficiently stated a claim for alleged violations of his First Amendment right to free exercise and to be free of retaliation for doing so under § 1983, against Allen and Whittaker.

*Second*, the defendants argue alternatively that "[e]ven if [the] [p]laintiff states a predicate constitutional violation, Chaplain Allen and Reverend Whittaker are entitled to qualified immunity." Defs.' Mot. at 9. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged

conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or [ ]Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Doe*, 796 F.3d at 104 (quoting *Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001)) (other citations omitted).

But here, the defendants "recite the standard for qualified immunity without specifying whether [they] assert[] that [the plaintiff] has failed to show a violation of a constitutional right or failed to show that that right was clearly established at the time, or offering any argument in support of either view."  *Pinson*, 246 F. Supp. 3d at 225; *see also* Defs.' Mot. at 9–11.  In any event, in response, the plaintiff cites to several cases that establish a prisoner's right to practice his religion, without retaliation and free from the imposition of any burden, other than for a legitimate penological interest. *See* Pl.'s Opp'n at 8 (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Turner v. Safely*, 482 U.S. 78, 89 (1987)); *id*. at 11 (citing *Levitan v. Ashcroft*, 281 F.3d 1313, 1317 (D.C. Cir. 2002)); *see Barnett v. Rodgers*, 410 F.2d 995, 1003 (D.C. Cir. 1969) (establishing same); *see also Patel v. Bureau of Prisons*, No. 09-200, 2011 WL 13253660, at *5 (D.D.C. Sept. 12, 2011) (collecting cases and finding that the right to a religious diet or prayer ritual is "quite clearly established.").

The defendants "may well have actually been motivated by legitimate penological goals" that justified their actions, and "in order for [the plaintiff's] claim to survive the summary judgment stage of this litigation," the plaintiff must "identif[y] affirmative evidence from which a [finder-of-fact] could find that he has carried his burden of proving the pertinent motive." *Aref*, 953 F. Supp. 2d at 147 (alterations in original) (quoting *Kimberlin v. Quinlan*, 199 F.3d 496, 498 (D.C. Cir. 1999)).  And "[i]t may be very difficult for [the plaintiff] to produce such evidence here." *Id*.

In any event, the Court assumed that will be a focus of discovery, and the Court is not prepared to concede at this point in the litigation that the plaintiff is without a §1983 claim against Allen or Whittaker.

*Third*, the defendants assert that the plaintiff has failed to state a claim for municipal liability (Count 6) against the District. *See* Defs.' Mot. at 11–14. A "municipality may be liable under Section 1983 if it is shown that the wrongdoing resulted from an unconstitutional policy, practice or custom promulgated or sanctioned by the municipality." *Muhammad v. Dist. of Columbia*, 584 F. Supp. 2d 134, 137 (D.D.C. 2008) (citing *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997); *Meyer v. Reno*, 911 F. Supp. 11, 15 (D.D.C. 1996)); *see Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691–95 (1978). Municipal liability can be demonstrated through (1) express municipal policy; (2) actions of a final municipal policymaker; (3) persistent conduct by non-policymakers (a "custom" with force of law); or (4) deliberate indifference to a risk of constitutional injury. *See Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted).

According to the defendants, the plaintiff has failed to sufficiently allege municipal liability through any of the alternative methods. *See* Defs.' Mot. at 12–14. They surmise that the plaintiff is relying primarily on the third theory—wrongdoing by custom or practice, *see id.* at 12–13 (citing Compl. ¶¶ 88–98), and interpret his Complaint as identifying only a "single incident" of alleged wrongdoing, which they argue is legally insufficient to establish a persistent pattern of wrongful conduct, *see id.* at 11,–13 (citing cases). "In the absence of an express policy, policies and customs for purposes of Section 1983 are significantly easier to define than to prove." *Hunter v. Dist. of Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)). "[T]he measure and type of proof required is not easy to quantify[,] *id.*

(quoting *Cox v. Dist. of Columbia*, 821 F. Supp. 1, 13 (D.D.C. 1993) (internal quotation marks omitted), but a plaintiff must "present concentrated, fully packed, precisely delineated scenarios[,]" *id.* (quoting *Parker v. Dist. of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (internal quotation marks omitted). "Statistics may be relevant, but there are no 'numerical standard[s] control[ling] the determination whether incidents of wrongful behavior cumulatively show a pattern amounting to a custom or policy.' " *Id.* (alterations in original) (quoting *Carter*, 795 F.2d at 124).

The Court cannot agree with the defendants that the plaintiff has only presented a "single incident." *See* Defs.' Mot. at 12. Although the plaintiff's arguments in support of wrongdoing by custom or practice are somewhat weak, and he fails to present much factual support outside of his own alleged experiences, he does, in fact, identify multiple examples of his own alleged mistreatment over the course of years, *see, e.g., id.* ¶¶ 32–51, 54–62, and generally references the experiences of other similarly situated inmates. *id.* ¶¶ 32–46, 49–51, 54–59, 96, 101.

The defendants also argue that, to whatever extent the plaintiff relies on the theory of deliberate indifference, *see, e.g.*, Compl. ¶¶ 89–98, he has failed to meet the standard for the same reason, *see* Defs.' Mot at 13 n.6. "[A] city's inaction, including its failure to train or supervise its employees adequately, constitutes a policy or custom under *Monell*[,] when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons in its domain." *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotation marks and citation omitted). The defendants maintain that the plaintiff "has not plausibly alleged that the District, the Mayor, the Council, or anyone with final policymaking authority knew or should have known that [his] constitutional rights were being violated," thereby defeating any deliberate indifference claim. Defs.' Mot. at 13 n.6 (quoting *Ware v. Dist. of Columbia*, No. 21-

cv-02895, 2022 WL 16571381, at *5 (D.D.C. Nov. 1, 2022)).  However, the defendants fail to adequately demonstrate that implausibility.  While the Court agrees that a municipality cannot be held liable under § 1983 based on *respondeat superior*, *see id*. (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)), the plaintiff does not rely on that theory.  He alleges that he and his attorney made several complaints of wrongdoing, *see id*. ¶¶ 41, 45–46, 48, that were either ignored or insufficiently handled by District authorities, *see id*. ¶¶ 32–51, 54–62, 87–106.  According to the plaintiff, the District "knew or should have known" about his alleged mistreatment.  *See id*. ¶¶ 102–03.  The Court finds these allegations sufficient to survive a 12(b)(6) challenge.  *See Warren v. Dist. of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004) (reversing and remanding case after finding that prisoner plaintiff's allegations were sufficient to state a claim for municipal liability based on deliberate indifference where he alleged that the District "knew or should have known about the ongoing constitutional violations, but did nothing[.]") (internal quotation marks omitted).  Of course, going forward, the plaintiff must ultimately "prove the violations, and prove as well that the District had actual or constructive knowledge of them . . . [to] establish[] the District's liability."  *Id*.  But, at this time, "the [C]ourt must assume the truth of all well-pleaded allegations[,]" *id.*, and, for the reasons already expressed, *see* Mem./Ord. at 14–15, the plaintiff's municipal liability claim, premised on deliberate indifference is, in fact, well pleaded, and survives dismissal.

(3) Disability Discrimination Claims

The defendants also renew their argument that the plaintiff has failed to state a claim under the ADA or the Rehabilitation Act (Counts 2 & 3) against the District.  *See* Defs.' Mot. at 15–18.  Title II of the ADA and Section 504 of the Rehabilitation Act protect prisoners from disability discrimination.  *See Lee*, 61 F. Supp. 3d at 143–44.  To establish a claim under either statute, a

plaintiff must state (1) that he is a qualified individual with a disability; (2) that he is being excluded from participation in, or is being denied benefits, services, programs, or other activities for which a public entity is responsible or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is because of his disability. *See Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250, 267 (D.D.C. 2015).

The defendants now argue that the plaintiff's disability discrimination claims are defective because the plaintiff "does not plausibly allege deliberate indifference on the District's part." *See* Defs.' Mot. at 17. Indeed, "to state a claim for intentional discrimination under Title II or section 504, a plaintiff must sufficiently allege at least 'deliberate indifference,' defined in this context as 'knowledge that a harm to a federally protected right is substantially likely, and a failure to act despite that likelihood.' " *Montgomery v. Dist. of Columbia*, No. 18-1928, 2019 WL 3557369, at *9 (D.D.C. Aug. 5, 2019) (quoting *Pierce*, 128 F. Supp. 3d at 278–79) (collecting cases)) (citation omitted). The defendants assert that the plaintiff has not made "such a showing under a failure to train theory or an appropriate official theory[,]" because he neither alleges "a pattern sufficient to put the District on notice that it needed to act to prevent any harm to federally protected rights[,]" nor does he allege "that the District was aware or should have been aware of any discriminatory conduct as alleged in Counts II and III." Defs.' Mot. at 17–18.

To the contrary, the Complaint sets forth such allegations. As already discussed, *see* pp. 9–11, *supra*, the plaintiff sets forth sufficient allegations regarding the District's alleged negligent hiring, training, and supervision, *see* Compl. ¶¶ 99–106, and he alleges that the District "knew or should have known" about Allen and Whittaker's alleged actions, *see id.* ¶¶ 102–03. Although those allegations are set forth in a separate count (Count 7), the plaintiff explicitly incorporates all

facts alleged in the previous paragraphs, including those involving his ADA and Rehabilitation Act claims, *see id.* ¶ 99.

To reiterate again, the Complaint includes yet additional factual allegations that support a *prima facie* disability discrimination claim. The plaintiff cites, with specificity, several of his medical conditions.  *See* Compl. ¶¶ 12, 16, 19, 24–32.  He alleges that, on several occasions, due to symptoms arising from one or more of these conditions, he was intentionally excluded by Allen, Whittaker, and others, from participation in religious activities, and that they disregarded his need for accommodations.  *See id*. ¶¶ 44–48, 60–63, 66, 68–71.  Once again, the plaintiff alleges that he and his attorney made several complaints about these issues. *See id*. ¶¶ 32, 41, 45–46, 48.

Under the failure to train theory, "[a] pattern of similar . . . violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).  Here, the plaintiff has satisfied the requisite standard for deliberate indifference.  "Courts in this district have found that standard satisfied where [Metropolitan Police Department] officers or other District personnel were allegedly aware that" an inmate was disabled, "but nevertheless failed to assess whether accommodations were necessary, or to provide those accommodations." *Montgomery*, 2019 WL 3557369, at *9 (citing *Sacchetti v. Gallaudet Univ.*, 181 F. Supp. 3d 107, 126 (D.D.C. 2016) (Walton, J.) (holding that plaintiff successfully stated a claim for intentional discrimination under Title II where "MPD knew that [the plaintiff] was . . . suffering from a mental illness, . . . and despite this knowledge, failed to . . . transport him to a medical or mental health facility"); *Pierce*, 128 F. Supp. 3d at 279 (finding that plaintiff "easily satisfie[d]" the "deliberate indifference" standard under Title II . . . where "[t]he District's employees and contractors knew that [the plaintiff] had a hearing disability, and

yet they did not undertake an assessment of the accommodations that [he] might need in order to access prison services[.]"))

Once again, it seems like the defendants' position is that the plaintiff is required to *prove* his ADA and Rehabilitation Act claims at this stage of the case, however, "[a]t the motion to dismiss stage of the case, a plaintiff bringing discrimination claims under § 504 of the [Rehabilitation Act] or Title II of the ADA 'does not need to prove a *prima facie* case of discrimination.'" *Seth v. Dist. of Columbia*, No. 18-1034, 2018 WL 4682023, at *9 (D.D.C. Sept. 28, 2018) (quoting *McNair v. Dist. of Columbia*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (other citations omitted)), *aff'd*, 813 Fed. App'x. 611 (D.C. Cir. 2020). Indeed, "the *prima facie* case should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 507 (2002). Here, the plaintiff's "complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests[,]" *id.* (citing Federal Rule 8(a)) (other citation and internal quotation marks omitted), and the Court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations[,]" *id.* (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). For the above-stated reasons, and for those previously stated, *see* Mem./Op. at 13–14, the plaintiff's ADA and Rehabilitation Act claims easily meet this low bar, and accordingly, they also survive the defendants' Motion to Dismiss.

IV.    The Plaintiff's Request to Amend

The plaintiff's Opposition includes an alternative request to amend his Complaint. *See* Defs.' Mot. at 16. It is unclear whether the Court's resolution of the defendants' Motion to Dismiss resolves that request given the survival of the bulk of the plaintiff's claims, but in any event, the request will be denied for several reasons. *First*, in order to survive a motion to dismiss, a plaintiff

may neither amend his complaint nor assert a new claim by way of a brief submitted in opposition to a dispositive motion. *See Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 Fed. Appx. 10 (D.C. Cir. Jul. 6, 2011), *cert. denied*, 565 U.S. 1093 (2011). *Second*, as pointed out by the defendants, *see* Reply at 8–9, the plaintiff failed to comply with D.C. Local Civil Rules 7(i), 7(m), or 15.1, in submitting this combined Motion to Amend. *Third*, although the plaintiff cites to the relevant standard applicable to seeking leave to amend, he does not set forth any basis for being granted leave in this case. *See* Pl.'s Opp'n at 16. At the time plaintiff made this request for leave to amend, this matter had been pending for nearly four years, counsel had already represented the plaintiff for nearly four months, and until September 2022, the plaintiff still had the right to amend the Complaint as a matter of course, but failed to do so. *See* Fed. R. Civ. P. 16(a)(1). Therefore, leave to amend will not be granted at this time.

V.      Conclusion

For the reasons set forth above, it is hereby

ORDERED that the defendants' Motion for Summary Judgment is GRANTED in part, ONLY as to the claims for medical malpractice (part of Count 1). The remainder of the Motion for Summary Judgment is DENIED without prejudice. It is further

ORDERED that the defendants' Motion to Dismiss is GRANTED in part ONLY as to the claims brought pursuant to 42 U.S.C. §§ 1985, 1986 (all of Count 5) and as to any alleged violations of the Eighth Amendment under 42 U.S.C. § 1983 (part of Count 4). The remainder of the Motion to Dismiss is DENIED. It is further

ORDERED that the plaintiff's Motion for Discovery is GRANTED as to all claims that survive dismissal: (Count 1) negligence (against the District and Allen), *see* Compl. ¶¶ 65–67; (Count 2) violations of the Americans with Disabilities Act ("ADA") (against the District), *see id.*

¶¶ 68–71; (Count 3) violations of the ADA and the Rehabilitation Act (against the District), *see id*. ¶¶ 72–75; (Count 4) violations of the First Amendment (free speech and free exercise) under 42 U.S.C. § 1983 (against Allen and Whittaker), *see id*. ¶¶ 76–78; (Count 6) Municipal Liability (against the District), *see id*. ¶¶ 87–94, 97–98; (Count 7) negligent hiring, training, and supervision (against the District), *see id*. ¶¶ 95–96, 99–106; (Count 8); negligent infliction of emotional distress (against the District, Allen, and Whittaker), *see id*. ¶¶ 107–11, and; (Count 9) Punitive Damages (against Allen and Whittaker in their individual capacities only).  It is further

ORDERED that the plaintiff's alternative request to amend the Complaint is DENIED.

SO ORDERED.

_____/s/_____
REGGIE B. WALTON
Date:   October 26, 2023                           Senior United States District Judge